**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **JESSIE R. COATES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL NO. 3:09CV302** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Jessie R. Coates, seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner

denying his application for Supplemental Security Income payments ("SSI").  The

Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ")

that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable

regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on July 26, 2006, claiming disability due to stress, depression, anxiety, and ankle pain, with an alleged onset date of April 1, 2006. (R. at 138-43, 155.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 101-05, 107-08.) On May 20, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 46-77.) On October 6, 2008, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act because he did not have a severe impairment or combination of impairments; or, in the alternative, if Plaintiff's impairments were considered severe, Plaintiff was still not disabled under the Act, because based on his age, education, work experience and residual functional capacity, there were jobs he could perform which exist in significant numbers in the national economy. (R. at 9-36.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d),

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past."  20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will not be awarded.  Id.  However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE").  When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when

_____

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  Id.  (footnote omitted).

the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 11.) At step two, the ALJ found that Plaintiff had impairments of the right ankle status-post fracture with complaints of chronic pain, depression, and anxiety, but that these impairments were not severe because they did not significantly limit (or were expected to significantly limit) Plaintiff's ability to perform basic work-related activities for twelve consecutive months, as required for a finding of disability. (R. at 11-30.) The ALJ therefore found that Plaintiff was not disabled as defined by the Act as a result of not having a severe impairment or combination of impairments. (R. at 11-30.) However, the ALJ nonetheless continued with the five-step analysis to demonstrate that even if he had found Plaintiff's impairments to be severe, Plaintiff would still not be disabled as defined by the Act. (R. at 31-36.) Specifically, at step three, assuming Plaintiff's impairments were severe, the ALJ found that Plaintiff's severe impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 31-33.) The ALJ next determined that Plaintiff had the RFC to perform less than the full range of light work, in that he could lift twenty pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an eight hour day; could sit six hours in an eight hour day; but that his pushing and pulling was limited to his lifting restrictions; he could not climb ladders, ropes, or

scaffolds; and while he could occasionally perform other postural activities such as climbing stairs and ramps, stooping, kneeling, crouching, and crawling, he must avoid even moderate exposure to hazards, such as moving machine parts and unprotected heights. (R. at 33-35.) As a result, the ALJ limited Plaintiff to simple, routine work in a low stress environment. (R. at 33-35.)

The ALJ then determined at step four of the analysis that Plaintiff could perform some of his past relevant work, such as his work as a fast food cook and a gas station pump attendant. (R. at 35.) At step five, after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 35-36.) Specifically, the ALJ found that Plaintiff could work as a packer, production inspector/grader, or a general production worker. (R. at 36.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 35-36.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ failed to consider the intellectual testing performed by Dr. Blanche Williams; (2) the ALJ failed to consider whether Plaintiff was disabled pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; (3) the ALJ committed legal error in finding Plaintiff's ankle fracture impairment, anxiety, and depression to be non-severe impairments; and (4) the ALJ failed to consider all of Plaintiff's limitations in the hypothetical posited to the VE. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 22-29.) Defendant argues in opposition that the Commissioner's final decision is supported by

substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 13-22.)

### A. Plaintiff contends that the ALJ failed to consider the intellectual testing performed by Dr. Blanche Williams.

Plaintiff argues that the ALJ did not give Dr. Williams's "uncontroverted opinion" appropriate weight, and, that if he had, the ALJ would have found that Plaintiff was disabled pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. (Pl.'s Mem. at 23.) Specifically, Plaintiff argues that Dr. Williams was the only psychologist to test Plaintiff's IQ, that her opinion was undisputed, and that the ALJ "simply, summarily, and irrationally" dismissed her opinion. (Pl.'s Mem. at 23.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Here, the ALJ found that Dr. Williams's opinion was inconsistent with other evidence of record. (R. at 25-27.) Dr. Williams opined that:

> Due to severe depression and anxiety, this claimant is not capable of performing even simple, repetitive tasks on a consistent basis. He could not maintain regular work attendance or work consistently through a day or week without frequent interruptions from his cognitive and emotional symptoms. He would require special supervision on any job to which he might be assigned. He would not interact well adequately with supervisors, coworkers, or the public. He does not have the coping resources need to withstand the usual stresses of competitive work.

(R. at 307.) The ALJ specifically noted that Dr. Williams was not provided with any treatment or school records, and that her conclusions were based almost exclusively on Plaintiff's reported symptoms "at a post-hearing evaluation of an individual trying to get a disability whose credibility is in serious question." (R. at 26.) The ALJ noted Dr. Williams's diagnostic rationale:

> [Plaintiff] and his mother-in-law credibly reported low self-esteem, chronically depressed mood, chronic irritability, neurovegetative signs, suicidal ideation, poor concentration, and chronic anxiety. He credibly reported a history of special education and poor literacy skills...Prior to 2006, there were apparently not the kinds of functional impairments that are associated with mental retardation, but it is likely that his intellectual functioning has always been below average.

(R. at 26, 307.)

There is substantial evidence to support the ALJ's decision to properly reject Dr. Williams's opinion of Plaintiff's mental status. Notedly, Dr. Williams relied on Plaintiff's statements that he attended special education classes in school, performed poorly in school, had poor literacy skills, and only held unskilled jobs.[6] (R. at 307.) However, the ALJ also noted that such were questionable conclusions. (R. at 25.) Indeed, Plaintiff stated in his disability report in 2006 that he did not attend special education classes. (R. at 161.) Plaintiff further stated that he could count money, use a checkbook, and handle a checking account; he could pay attention for a "long time mostly"; he could follow written instructions well, if he read them more than once; and he did not check understanding, completing tasks, memory, or following instructions as adversely affected by his impairments. (R. at 177-80.) On October 15, 2006, Plaintiff told Dr. Blackmer, a licensed clinical psychologist, that he was in a regular classroom setting, repeated the third grade, but otherwise received mostly A's and B's in school. (R. at 215.) Plaintiff told Dr. Williams on June 6, 2008, that he attended special education classes, and repeated the third grade and certain tenth grade courses. (R. at 304.) Plaintiff testified at the hearing before the ALJ that he "barely passed" in his learning disabled classes in school. (R. at 50-51.) Other than Plaintiff's inconsistent statements about his education, Plaintiff's record reflects various other inconsistencies about his ankle injuries and the circumstances surrounding them,[7] his physical

---

[6] The vocational expert testified that some of Plaintiff's past work actually included both semi-skilled and skilled work. (R. at 79-82.)

[7] Plaintiff told Dr. Hamlor, MD, in August 2004 that he was hit by a vehicle while sitting on the front porch at home on 8/29/03. (R. at 206.) Plaintiff told Dr. Leon Grigoryev, MD, on 11/15/06, that he slipped off the front porch and sprained his right ankle in December 2001, and then subsequently was hit by a truck on 7/28/03, again injuring his right distal leg. (R. at 238.) Plaintiff told Jane C. Rose, a licensed clinical social worker (LCSW) in 2006 that he was struck by a truck traveling approximately 35 mph, and that he did not receive any financial compensation because the

functional abilities and limitations,[8] and his mental condition.[9]  As a result of such

inconsistencies, the ALJ found that Plaintiff's credibility was significantly undermined.  (R. at

29.)  At the same time, Dr. Williams stated that she found Plaintiff entirely credible.  (R. at 306.)

       In regards to Plaintiff's intelligence, Dr. Blackmer opined that Plaintiff functioned in the

upper end of the borderline range of intelligence.  (R. at 216.)  Dr. Insinna, a state agency

---

driver and truck were uninsured.  (R. at 245.)  However, he testified before the ALJ that the man
who hit him was the man his ex-wife was having an affair with, and that he told the hospital he
broke his foot on a trampoline because he was afraid of the man.  (R. at 64, 71.)  Plaintiff told Dr.
Christopher E. Mullins, DO, on 7/7/08, that in 2003 someone pinned his foot and ankle between a
car and a curb.  (R. at 308.)  Plaintiff told Dr. Juan Cuebas, M.D., on 8/19/08, that a truck crushed
his right leg in July 2003, and in November 2003 he had a misstep where he twisted his right ankle,
had swelling, and it took him seven to eight months before he was able to put any weight on it.  (R.
at 310.)  Plaintiff provided no evidence of this alleged November 2003 injury.

   [8]  Plaintiff stated on 8/25/06 that he could not stand or walk for more than three minutes.  (R.
at 179.)  He told Dr. Blackmer on 10/15/06 that he helps his wife do laundry and other housework.
(R. at 214.)  On 11/15/06, Plaintiff told Dr. Grigoryev that he could stand for 10-15 minutes at a
time, walk 500 feet, climb stairs occasionally; and that he did dishes, laundry, and vacuum cleaning
occasionally.  (R. at 239.)  He could also perform a moderately deep squat on that visit and rose to
standing independently.  (R. at 240.)  Plaintiff told LCSW Rose in 2006 that he and his wife washed
clothes and cleaned, and he bathed and dressed his children.  (R. at 245-47.)  On 3/26/07, a social
security employee noted that Plaintiff did not walk with as much of a limp outside of the social
security office, nor did he seem saddened or in pain away from the office.  (R. at 289.)  Plaintiff also
testified before the ALJ that he can stand for 30 minutes at a time and that he uses a cane every day,
but that it was not prescribed.  (R. at 57, 77.)

   [9]  Most notable of the inconsistencies is Plaintiff's lack of treatment regarding his alleged
depression and anxiety.  Regarding the sparse treatment Plaintiff did obtain, it was limited, generally
routine, and conservative.  Specifically, Plaintiff was in therapy with LCSW Rose from only August
2006 to October 2006.  (R. at 26, 245-66.)  Plaintiff reported depression and anxiety to Dr. Ancheta,
MD, in August 2006, during four visits for only medication refills, and again in November 2007 and
January 2008, again during visits for medication refills.  (R. at 26, 290-301.)  Plaintiff was given
medication for depression and anxiety in July and August 2008, but he has never been hospitalized
for his depression or anxiety.  (R. at 26, 308-12.)  The ALJ also noted that Plaintiff saw Dr. Williams
after a twenty-one month lapse since he was last in treatment with a medical health professional, and
that he had not received treatment from any psychiatrist or psychologist.  (R. at 26.)  Furthermore,
the ALJ noted that none of Plaintiff's treating physicians who had been prescribing medications
indicated that the medications were not helpful, or that Plaintiff's condition warranted a referral for
treatment by a mental health professional.  (R. at 26.)

psychologist, also opined on October 18, 2006, that Plaintiff functioned in the upper end of the borderline range of intelligence.  (R. at 222.)  Dr. Williams herself opined that Plaintiff functioned in the borderline range of intelligence.  (R. at 306.)  However, the remainder of Dr. Williams's opinion is, as the ALJ notes, "not supported by the longitudinal record with its limited and generally routine and conservative medical treatment."  (R. at 26-27.)  Furthermore, Dr. Williams's opinion that Plaintiff is mentally unstable to work was properly rejected by the ALJ because that is an opinion on an issue of disability reserved to the Commissioner.  (R. at 26-27; 20 C.F.R. § 416.927(e).)

The ALJ properly determined that Dr. Williams's opinion was inconsistent with other evidence of record.  Dr. Williams unequivocally accepted Plaintiff's statements as credible and was not provided with any treatment or school records.  The ALJ did not, as Plaintiff contends, "simply, summarily, and irrationally" dismiss Dr. Williams's opinion.  (Pl.'s Mem. at 23.)  Instead, the ALJ's decision to reject her opinion is based on substantial evidence and application of the correct legal standards.

**B.      Plaintiff contends that the ALJ failed to consider whether Plaintiff was disabled pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.**

Plaintiff argues that he is disabled pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.[10]  (Pl.'s Mem. at 23-24.)  Plaintiff argues in this regard that he has a full scale IQ of 61,

---

[10] This section defines when a person is disabled due to mental retardation.  § 12.05 states that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22."  Plaintiff relies on § 12.05C, which states that "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," along with evidence that demonstrates or supports onset of the impairment before age 22, will render a person disabled under this section.

and that he has a severe right ankle-tibia fracture and a malunion of the tibia with traumatic arthritis that causes significant work-related limitations, including limitations on walking and standing. (Pl.'s Mem. at 24.) Plaintiff argues that his low IQ and physical restrictions invoke 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C, such that he is disabled and entitled to benefits. (Pl.'s Mem. at 24.) Plaintiff also argues that the ALJ never addressed Plaintiff's request to have a consultative examiner conduct IQ testing. (Pl's Mem. at 23.)

There is substantial evidence to support the ALJ's finding that Plaintiff was not disabled under § 12.05C. The ALJ noted that Plaintiff raised the issue of mental retardation for the first time at the hearing before the ALJ in May 2008. (R. at 32.) The ALJ further noted that if Plaintiff's mental deficits were truly lifelong, then he would not have needed to await the results of his recent IQ test before alleging it. (R. at 32.) In fact, Dr. Williams's assessment of Plaintiff's IQ stated that prior to 2006, Plaintiff did not have the kinds of functional impairments that are associated with mental retardation. (R. at 307.) In 2006, Plaintiff was thirty-one years old - which is well beyond the requirement of § 12.05 that he demonstrate deficits in adaptive functioning prior to age twenty-two. The ALJ noted that deficits in adaptive functioning are "lack of everyday living skills, such as talking, maintaining one's personal hygiene, getting dressed, going to school or work, preparing a meal, cleaning the house of one's clothes, going shopping, etc." (R. at 33.) The ALJ found that Plaintiff had lived independently, graduated from high school with a regular diploma, obtained a driver's license, and that he had custody of two children, one of whom is disabled with autism and attention deficit hyperactivity disorder. (R. at 33.) Furthermore, as noted above, some of Plaintiff's past work was defined as skilled and semi-skilled. (R. at 33, 79-82.) Because Plaintiff did not demonstrate deficits in adaptive functioning,

the ALJ properly concluded that he was not disabled under § 12.05A, B, or C.

Furthermore, Plaintiff's argument that the ALJ never addressed Plaintiff's request to have a consultative examiner conduct IQ testing is without merit. First, the ALJ noted that when Plaintiff was sent for a psychological consultative examination with Dr. Blackmer in 2006, Dr. Blackmer did not note any significant cognitive deficiencies. (R. at 32, 214-17.) Also, if Plaintiff's medical evidence had suggested a cognitive impairment, Plaintiff would have been tested in conjunction with the consultative examination. (R. at 32.) Finally, there was no need to conduct any IQ testing because, as stated above, Plaintiff did not demonstrate deficits in adaptive functioning, a requirement that must be met under § 12.05. Therefore, even in the absence of IQ testing, and even if Plaintiff had severe impairments imposing significant work-related limitations, Plaintiff would not qualify as disabled under any criteria of § 12.05.

The ALJ considered whether Plaintiff was disabled pursuant to § 12.05. There is substantial evidence to support his conclusion that Plaintiff was not disabled as defined under this section, and the ALJ applied the correct legal standards in reaching this decision.

### C. Plaintiff contends that the ALJ committed legal error in finding Plaintiff's ankle fracture impairment, anxiety, and depression to be non-severe impairments.

Plaintiff also argues that his ankle fracture, anxiety, and depression were severe impairments impacting his ability to work, and that they had lasted and would last more than twelve months, as required for him to be found disabled. (Pl.'s Mem. at 25-27.) Plaintiff argues that he injured his ankle in 2003 and that his medical records reflect consistent treatment from 2004 to 2009. (Pl.'s Mem. at 25.) Plaintiff further argues that he still treats with a pain management doctor, takes prescribed medications, and has surgery as an option. (Pl.'s Mem. at

14

25.)  Also, Plaintiff argues that he attended special education classes all through school, he has a tested low IQ of 61, his anxiety and depression have been documented, and two psychologists have opined that Plaintiff suffered from anxiety and depression with significant effects on work activities.  (Pl.'s Mem. at 26-27.)  Finally, Plaintiff argues that the above evidence, along with his own statements, is corroborated by Plaintiff's work history and that he has never maintained substantial gainful employment.  (Pl.'s Mem. at 27.)

The second step of the analysis requires Plaintiff to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c).  Basic work activities refer to:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) capacities for seeing, hearing, and speaking;
> (3) understanding, carrying out, and remembering simple instructions;
> (4) use of judgment;
> (5) responding appropriately to supervision, co-workers and usual work situations; and
> (6) dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

Here, the ALJ found that Plaintiff had the medically determinable impairments of a right ankle status-post fracture with complaints of chronic pain, depression, and anxiety, but that these impairments were not severe because they did not significantly limit Plaintiff's physical or mental ability to do basic work activities for twelve consecutive months.  (R. at 11-30.)  Specifically, the ALJ found that Plaintiff's treatment record did not support his allegations regarding the severity of his limitations, and that Plaintiff's treatment has been "generally routine, conservative, and unremarkable – and furthermore, it includes significant gaps."  (R. at

15

28.)  The ALJ also found that Plaintiff had made a number of inconsistent statements and statements contradicted by other evidence of record, and that these statements significantly undermined his credibility.  (R. at 28-29.)  Furthermore, as discussed above, with regards to Plaintiff's allegations of mental/emotional impairments, the ALJ rejected the conclusory opinions of both LCSW Rose and Dr. Williams.  (R. at 29-30.)  Instead, the ALJ found that Plaintiff had only mild limitations in the functional areas of daily living, social functioning, and concentration, persistence, and pace, and that Plaintiff had no limitations in the functional area of episodes of decompensation; as such, Plaintiff's impairments were nonsevere.  (R. at 30.)

There is substantial evidence supporting the ALJ's decision that Plaintiff's medically determinable impairments were nonsevere.  With regards to Plaintiff's right ankle status-post fracture and accompanying chronic pain, the record indicates that the ankle fracture had healed and Plaintiff retained only a mild curvature of the distal tibia and fibula, and only mild soft tissue swelling.  (R. at 238, 244.)  Also, records indicate that Plaintiff had "fairly normal" plantar flexion in the right ankle, no muscle atrophy, had only a moderate limp on the right side, and could perform a moderately deep squat and rise to standing position independently.  (R. at 240.)  Further, Plaintiff's most recent records indicate that Plaintiff was seeing a pain management specialist (Dr. Saleeby), who was controlling his medications.  (R. at 325-31.)  Dr. Saleeby noted on September 25, 2008, that Plaintiff was reluctant to try anything besides narcotics for his ankle pain, and that Plaintiff's wife stated that he was "doing well on 2-3 Vicoprofen daily and is able to function, so why would we do anything differently?"  (R. at 329.)  On November 26, 2008, Dr. Saleeby noted that Plaintiff did not use an assistive device, walked with no antalgic gait, and that Plaintiff's medications made his pain tolerable.  (R. at 326.)  Also, records indicate that

Plaintiff saw an orthopedic surgeon in 2009, who indicated that there was no need for any further care other than pain management. (R. at 333.) Furthermore, contrary to Plaintiff's contention, the ALJ properly noted that there were significant gaps in Plaintiff's treatment for his ankle impairment, which militated against a conclusion that he had a significant pain syndrome related to his ankle. (R. at 29.) None of the above findings support a conclusion that Plaintiff has significant limitations in the ability to walk or stand, as Plaintiff alleges. The Court therefore finds that there was substantial evidence supporting the ALJ's decision that Plaintiff's ankle impairment was not a severe impairment that significantly limited his ability to do basic work activities.

There is also substantial evidence to support the ALJ's decision that Plaintiff's depression and anxiety did not constitute severe impairments. Plaintiff relies on the opinions of Drs. Williams and Blackmer, and LCSW Rose, to support his allegation that his mental impairments significantly limited his ability to perform basic work activities, and that his impairments would last and had lasted for more than twelve months. However, the ALJ properly accorded those opinions little weight, finding that they were conclusory and unsupported by other evidence of record. Specifically, as discussed above, Dr. Williams's opinion was properly rejected by the ALJ. Dr. Blackmer's opinion was accorded little weight by the ALJ. The ALJ also noted that Dr. Insinna considered Dr. Blackmer's opinion in his own assessment. (R. at 19.) However, Dr. Insinna found that while certain aspects of Plaintiff's RFC, as determined by Dr. Blackmer, were consistent with his own assessment, it appeared that Dr. Blackmer relied too heavily on Plaintiff's subjective report of symptoms and limitations, and that Dr. Blackmer's assessment overstated the severity of Plaintiff's limitations. (R. at 19, 223.) Consistent with

such a conclusion, the ALJ found that the DDS medical sources (Drs. Blackmer and Insinna) who assessed Plaintiff were being overcautious and assigning Plaintiff limits that were not supported by the record as a whole. (R. at 29.) The record reflects substantial evidence, as discussed above, supporting the ALJ's decision in this regard. The ALJ's decision to reject LCSW Rose's opinion is also supported by substantial evidence, because the ALJ found that her opinion was conclusory; it was an opinion on an issue of disability reserved to the Commissioner; and her opinion was based more on Plaintiff's financial needs, rather than whether or not he, in fact, suffered from a disability. (R. at 30.) Accordingly, for the reasons stated above, the ALJ's finding that Plaintiff's anxiety and depression were not severe is supported by substantial evidence and application of the correct legal standards.

> **D.** **Plaintiff contends that the ALJ failed to consider all of Plaintiff's limitations in the hypothetical person.**

Finally, Plaintiff argues that had the ALJ included all of the Plaintiff's limitations in the hypothetical person proposed to the VE, the evidence would have established that such a person is disabled and unable to be employed. (Pl.'s Mem. at 27-29.) Specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's significant mental limitations due to his IQ (he could not make change, read well, or do subtractions); Plaintiff's impaired ability to concentrate, interact with others, maintain regular attendance, and deal with stress in a competitive workplace; and Plaintiff's walking and standing restrictions imposed by his severe ankle injury (he could not stand and put weight on his ankle for 6 hours in an eight-hour day). (Pl.'s Mem. at 27-29.)

When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence of record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the

national economy that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.

1989).

Here, the ALJ posed a proper hypothetical question that accurately represented Plaintiff's

RFC based on all evidence of record and a fair description of Plaintiff's impairments.  Plaintiff's

argument that the ALJ failed to consider Plaintiff's alleged mental impairments is without merit.

For the reasons discussed above, the ALJ properly found that Plaintiff did not have any

significant mental limitations due to his low IQ.  Further, the allegations that Plaintiff's mental

impairments have impacted his ability to concentrate, to interact with others, to maintain regular

attendance, and to deal with stress in a competitive workplace, are not supported by the record as

a whole.  (Pl.'s Mem. at 28.)  Contrary to Plaintiff's argument, the record does not contain

"uncontroverted evidence" as to these alleged symptoms.  (Pl.'s Mem. at 28.)  The record instead

contains Plaintiff's own statements, which, as discussed both above and extensively by the ALJ,

were entitled to little weight based on Plaintiff's lack of credibility.  The record also contains

evidence of treatment for Plaintiff's ankle impairment and resulting pain, but little evidence of

treatment for any mental impairment.  Furthermore, the ALJ included Plaintiff's educational

background in the hypothetical person and further limited Plaintiff to simple, routine work in a

low stress environment.  (R. at 33-35, 82-85.)  Plaintiff's alleged mental limitations are not

supported by the record as a whole.  Therefore, the ALJ's decision to not include those

limitations in the hypothetical person is supported by substantial evidence and application of the

correct legal standards.

Furthermore, the ALJ properly found that Plaintiff did not have significant walking and

standing restrictions as a result of his injury.  Plaintiff argues in his brief that "it is irrational to

find that a 193 lb. person could stand and put weight on such an ankle for 6 hours out of an eight hour work day." (Pl.'s Mem. at 28.) However, again, Plaintiff seems to rely on his own statements and the mere fact that he sought treatment for his ankle impairment. (Pl.'s Mem. at 28-29.) Plaintiff appears to disregard the opinion of Dr. Grigoryev, who opined in November of 2006 that Plaintiff was "limited to standing and walking up to six hours in an eight hour work day with normal breaks and would be able to walk for short distances without assistive device, but for longer distances and on uneven terrain he can use a straight cane to off load his right foot due to pain." (R. at 241.) The ALJ noted that Dr. Grigoryev's assessment was valid only if Plaintiff's reports of pain were accepted. (R. at 22.) As noted above, the ALJ did not give credence to Plaintiff's reports of pain, but the ALJ nevertheless considered Plaintiff's arguments in his analysis, giving Plaintiff the benefit of the doubt. In giving Plaintiff the benefit of the doubt, the ALJ gave credit to the assessments of Drs. Blackmer, Insinna, and Grigoryev; yet still found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (R. at 34.) Plaintiff seems to further argue that he needed a cane to ambulate, but there is no evidence in the record to support this contention. (Pl.'s Mem. at 29.) Furthermore, there is no evidence that the cane was even prescribed for Plaintiff, and Dr. Grigoryev's assessment merely stated that Plaintiff <u>could</u> use a straight cane for longer distances and on uneven terrain to ease his pain. (R. at 241.)

Contrary to Plaintiff's contention, it is clear that the ALJ considered the walking and standing restrictions imposed by Plaintiff's ankle impairment. There is substantial evidence supporting the ALJ's decision not to include restrictions on Plaintiff's walking and standing

abilities beyond the limitations already considered by the ALJ, and in the hypothetical presented to the VE. The ALJ posed a proper hypothetical to the VE that accurately represented Plaintiff's RFC based on all evidence of record and a fair description of Plaintiff's impairments, and as such he did not commit legal error.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a _de novo_ review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____<br>
DENNIS W. DOHNAL<br>
UNITED STATES MAGISTRATE JUDGE

Date: February 8, 2010
Richmond, Virginia